WISCONSIN BANKERS ASSOCIATION (Incorporated),
et al., Plaintiffs-Respondents,

V.

MUTUAL SAVINGS & LOAN ASSOCIATION OF WISCONSIN,
Defendant-Appellant.

Supreme Court

No. 80–1349. Argued June 1, 1981.—Decided June 30, 1981.
(Also reported in 307 N.W.2d 180.)

For the appellant there were briefs by *Edward A. Dudek*, *James D. Friedman* and *Frisch, Dudek & Slattery, Ltd.*, of Milwaukee, and oral argument by *Mr. Friedman.*

For the respondents there was a brief by *James P. Brody, Lawrence J. Bugge, Thomas L. Shriner, Jr.,* and *Foley & Lardner,* of Milwaukee, and oral argument by *Mr. Shriner.*

PER CURIAM. The defendant-appellant Mutual Savings and Loan Association (Mutual) seeks a review of a circuit court order which entered a permanent injunction restraining Mutual from specified financial activities. It is the decision of this court to terminate that injunction.

The events underlying this case began in May, 1976. In that month Mutual offered its Supreme Account II to the public. This was a non-interest bearing savings account against which a depositor could write a "negotiable sight draft" payable to a third party. On May 17, 1976, the Wisconsin Bankers Association and two of its members (the banks) commenced an action seeking temporary and permanent injunctions to prevent Mutual from

offering the Supreme Account II. On June 14, 1976, the circuit court for Milwaukee county, the Honorable MICHAEL J. BARRON, refused to grant a temporary injunction restraining Mutual from operating its new program. Subsequent trial and court of appeals opinions found that the accounts in question were not in violation of state law. On May 13, 1980, this court reversed, declaring withdrawals by negotiable sight drafts contrary to sec. 215.17, Stats., if offered by a savings and loan.

The detailed facts in this case have been published in the court of appeals decision, *Wis. Bankers Asso. v. Mutual Sav. & Loan Asso.*, 87 Wis.2d 470, 275 N.W.2d 130 (Ct. App. 1978). On review of the court of appeals decision at 96 Wis.2d 438, 455, 291 N.W.2d 869 (1980), we reversed and sent the case back to the trial court with the following mandate:

"*By the Court.*—Rights declared; the decision of the Court of Appeals is reversed and cause remanded to the Circuit Court for further proceedings not inconsistent with this opinion."

Upon remand the trial judge, on July 25, 1980, entered judgment declaring the defendant's Supreme Account II illegal as inconsistent with the provisions of sec. 215.17, Stats. Judge Barron further ordered the defendant, its officers, directors, agents and employees were required by September 1, 1980, to preclude all depositors from withdrawing any funds from Supreme Account II accounts by utilizing sight drafts which were negotiable and payable to the order of a third party and were mandatorily enjoined from that date from honoring third-party sight drafts written on such accounts. This order in the judgment was consistent with the opinion of this court in *Wis. Bankers, supra* at 454:

"We hold that the provisions of sec. 215.17 preclude the use of sight drafts payable to third parties to effectuate withdrawals from savings accounts."

This ruling is immediately followed at page 455 by the following:

"On appellate review, plaintiffs have sought 'a declaration from the court that Supreme [Account] II is illegal.' . . . Accordingly, the action is akin to one requesting declaratory relief. Thus we declare Supreme Account II illegal as inconsistent with the provisions of sec. 215.17, Stats."

The trial judge, albeit critically, enjoined the defendant from honoring sight drafts to third persons on Supreme II Accounts. The judge stated that under the decision of this court he had no choice and he was correct.

The issuance of an injunction is appropriate to protect a person's legal rights.

"Wherever a right cognizable at law exists or is created, a violation of that right will be prohibited, unless there are other considerations of policy or expediency which forbid a resort to the remedy of injunction. . . .
"An injunction merely protects and enforces rights existing under current laws and conditions." 43 C.J.S., *Injunctions* sec. 18 (1978).

In the present case the parties sought a declaration of legal rights and this court declared them. The trial court followed this court's declaration by issuance of the injunction preserving the legal rights as declared since prior to this court's decision, Mutual had violated the banks' legal rights. Under the circumstances of the court's remand in this case and order to the trial court to proceed consistent with this court's opinion, it would not have been consistent with this court's declaration of rights for the trial judge to rule that the activities of Mutual could continue as long as civil damages could be ascertained. The legal remedy of the bankers in this situation was to have the use of sight drafts to third parties by Mutual terminated until state law was superseded by federal law.

The trial judge consistent with this court's decision ordered stopped an activity declared by this court to be not sanctioned by law.

Mutual sought temporary relief from this injunction from the court of appeals under sec. 809.12, Stats.[1] On August 14, 1980, the court of appeals refused to stay the injunction. On August 16, 1980, the Chief Justice of the Supreme Court ordered the injunction stayed pursuant to sec. 808.07 (1) and (2).[2] On August 25, 1980, this court dissolved the stay and ordered the injunction to take effect on October 1, 1980. On August 25, 1980, this court also on its own motion took jurisdiction of an appeal by Mutual challenging the validity of the injunction. On

---

[1] "**809.12 Rule (Motion for relief pending appeal).** A person seeking relief under s. 808.07 shall file a motion in the trial court unless it is impractical to seek relief in the trial court. A motion in the court must show why it was impractical to seek relief in the trial court or, if a motion had been filed in the trial court, the reasons given by the trial court for its action. A person aggrieved by an order of the trial court granting the relief requested may file a motion for relief from the order with the court. A judge of the court may issue an ex parte order granting temporary relief pending a ruling by the court on a motion filed pursuant to this rule. A motion filed in the court under this section must be filed in accordance with Rule 809.14."

[2] "**808.07 Relief pending appeal.** (1) EFFECT OF APPEAL. An appeal does not stay the execution or enforcement of the judgment or order appealed from except as provided in this section or as otherwise expressly provided by law.

"(2) AUTHORITY OF A COURT TO GRANT RELIEF PENDING APPEAL. (a) During the pendency of an appeal, a trial court or an appellate court may:

"1. Stay execution or enforcement of a judgment or order;

"2. Suspend, modify, restore or grant an injunction;

"3. Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered; or

"4. Hear and determine a motion filed under s. 806.07.

"(b) Relief under this subsection may be conditioned upon the filing of an undertaking in the trial court."

September 5, 1980, this court denied a motion by Mutual for an early hearing on this appeal. The injunction took effect as ordered on October 1, 1980. Briefs were submitted and this court heard arguments on June 1, 1981.

Since suit was first commenced between the parties in 1976, changes have been made in federal law which have a controlling impact on the underlying dispute. On March 31, 1980, Congress enacted Public Law No. 96–221. This law authorizes both state and federally chartered savings and loans to offer "Now Accounts." These accounts are deposits on which interest or dividends are paid and which can be withdrawn by "negotiable or transferable instruments for the purpose of making transfers to third parties." Public Law 96–221, sec. 303(a)(1).[3] This law by its terms went into effect on January 1, 1981. Since that date Mutual and other savings and loans have offered Now accounts to the public under the authority of federal law.

It is clear that federal law now authorizes what was forbidden under state law as declared in *Wis. Bankers Ass'n v. Mut. Savings & Loan,* 96 Wis.2d 438, 291 N.W. 2d 869 (1980). Under federal law savings and loans may now honor certain negotiable instruments made payable to third parties, though this was not permissible under sec. 215.17, Stats. Our decision declaring rights under sec. 215.17 is still the authority on the meaning of that statute. The restrictions of that statute, however, have been at least in part superseded by federal law.

---

[3] "Sec. 303. Section 2(a) of Public Law 93–100 (12 U.S.C. 1832 (a)) is amended to read as follows:

"(a)(1) Notwithstanding any other provision of law but subject to paragraph (2), a depository institution is authorized to permit the owner of a deposit or account on which interest or dividends are paid to make withdrawals by negotiable or transferable instruments for the purpose of making transfers to third parties."

On this review Mutual challenges the validity of the permanent injunction which was imposed on it to insure compliance with this court's decision. For the first three months after that injunction went into effect, sec. 215.-17, Stats., was the controlling law. The injunction prevented Mutual from acting contrary to that law. Since January 1, 1981, however, the underlying statute has been superseded and is unenforceable. Under current federal law Mutual and other savings and loans can and do offer financial services of a kind which are forbidden by the permanent injunction. Due to this change in circumstances, Mutual requests that the injunction be terminated.

The banks have argued that the injunction should continue in case there is a change in federal law. They also argue for continuation of the injunction since federal law did not authorize Now accounts for corporate customers and they theorize savings and loans will not honor this prohibition and if such illegal acts are committed, that the banks should not have the burden and expense of litigation to seek a new injunction. These arguments are based on speculation as to what the Congress may or may not enact in the future and also that savings and loans being advised in the law will choose to violate it. The fact that Mutual interpreted sec. 215.17, Stats., in a manner contrary to this court's interpretation does not lead to the conclusion that Mutual or other savings and loans will intentionally commit a prohibited act.

As the United States Supreme Court stated in *Wisconsin v. Illinois*, 281 U.S. 179, 197–98 (1930), "The right of the complainants to a decree is not affected by the possibility that Congress may take some action in the matter." This court must grant, modify, vacate or terminate an injunction on the merits of the case without re-

gard for whether a legislative body may or may not take future action altering the rights of the parties.

As this court stated in *Pure Milk Prod. Coop. v. National Farmers Organ.*, 90 Wis.2d 781, 280 N.W.2d 691 (1979) :

"The injunction is a preventive order looking to the future conduct of the parties. To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and will injure the plaintiff. *The Kimberly & Clark Co. v. Hewitt*, 75 Wis. 371, 375, 44 N.W. 303 (1890). . . .

"[A]n injunction is designed to prevent injury, not to compensate for past wrongs, and that an injunction may issue merely upon proof of a sufficient threat of future irreparable injury. . . .

"A critical question for a court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated. We recognize that evidence of fraudulent past conduct gives rise to an inference of a reasonable expectation of continued violations. . . .

"The mere fact that a defendant has committed an illegal act does not justify an injunction, under penalty of contempt, which enjoins it from all unlawful practices which the court has neither 'found to have been pursued nor persuasively to be related to proven unlawful conduct.' *Labor Board v. Express Pub. Co.*, 312 U.S. 426, 433 (1941). The purpose of an injunction is to prevent violations, 'the threat of which in the future is indicated because of the similarity or relation to those unlawful acts' which have been committed." *Id*. at 800–03.

In the present case federal law currently authorizes Mutual to offer Now accounts. The injunction ordering otherwise is unenforceable, since it is based on a statute contrary to the federal law. Under these circumstances, we order that the injunction be terminated, and any future changes in the law must be left to future challenge.

The judgment and order of the circuit court are modified, and as modified, affirmed.

COFFEY, J., took no part.